STATE OF HAWAII, Plaintiff-Appellee, *v.* CLAUDE E. BONDS, JR., Defendant-Appellant

NO. 5921

APRIL 19, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

Appellant's automobile was stopped by a police officer for the purpose of checking his possession of a required permit, without cause for the officer to suspect a violation of law. Appellant was convicted of possession of marijuana and of a dangerous weapon, both of which were found in his car by the officer after the stop. This appeal challenges the stop as an unreasonable seizure in violation of the Fourth Amendment and Article I, Section 5 of the Hawaii Constitution.[1] We agree that the evidence was obtained as the result of an invalid seizure and that the conviction must be reversed.

For the purposes of this opinion, we accept the version of the stop and search to which the police officer testified. The attention of the officer was first drawn to Appellant's automobile by its repeated acceleration and deceleration. He observed that the vehicle had wide tires which identified it as a "reconstructed vehicle". Under the then-operative provision of the municipal traffic ordinance,[2] a reconstructed vehicle was required to bear a windshield sticker indicating that approval for reconstruction had been given, and in addition

---

[1] In addition to challenging the validity of the stop, Appellant contended that the item alleged to be a deadly weapon — metal nunchaku sticks — which provided the probable cause for his arrest, was not such a weapon, HRS § 134-51, and that the recovery of marijuana from the interior of his auto, which occurred subsequent to his arrest, resulted from an unreasonable warrantless search and seizure under the Fouth Amendment to the United States Constitution and Art. I, Sec. 5 of the Hawaii Constitution. Since we find that the stop of Appellant while he was driving was invalid, we do not reach these issues.

[2] Sec. 15-19.38, *1969 Traffic Code of the City and County of Honolulu*. Neither party has referred the court to the applicable ordinance, and the court may not take judicial notice of it. HRS § 622-13(c); *Farrior v. Payton*, 57 Haw. 620, 634-35, 562 P.2d 779, 788-89 (1977); *State v. Lane*, 57 Haw. 277, 278, 554 P.2d 767, 768-69 (1976). Instead, both parties rely in their briefs upon the testimony of the arresting officer at the suppression hearing to establish the terms of the reconstructed vehicle regulations. This testimony will be set forth briefly to clarify the presentation of the facts of this case. But we do not imply that such evidence of a municipal ordinance may establish its terms, even if both parties concur in its operative provisions in their briefs. *See* HRS § 622-13.

Reconstruction of vehicles is now governed by HRS § 286-85 (1977 Supp.).

the driver of such a vehicle was required to carry a receipt detailing the reconstructions that had been approved.

Upon noticing that Appellant's vehicle was reconstructed, the officer radioed in for a registration check and was informed that it was registered in Appellant's name. He then switched on his flashing light and pulled Appellant over for the purpose of ascertaining whether Appellant possessed a reconstruction permit as required by the ordinance. After stopping Appellant, the officer left his car and approached Appellant's car. As he did so, the officer saw that Appellant's vehicle displayed a reconstruction sticker, but he nevertheless continued to approach the car and upon reaching it asked Appellant for his license. While leaning down to look in the car window at Appellant, the officer noticed a set of metal nunchaku sticks, which he believed to be a deadly weapon, between the front seats. He then ordered Appellant out of the car, arrested him for possession of the weapon,[3] and reached into the car to recover the nunchaku sticks. As he reached in he saw, on the floor of the front seat, a cloth bag from which a transparent package containing a substance resembling marijuana was protruding. He seized both the nunchaku sticks and the bag, the contents of which were found to be marijuana on subsequent analysis. It is this evidence which Appellant sought to suppress and which was admitted over his objection.

The sequence of events which led to the seizure of the incriminating evidence presents a series of questions with respect to permissible police action. The sequence commences with the stop of Appellant's vehicle by the police officer and continues through the arrest of Appellant for possession of a dangerous weapon, the entry of the officer into the car to obtain the weapon, the observation of the

---

[3] In testimony, nunchaku sticks were described as paired sticks bound together by a chain, used for training in martial arts. They are ordinarily made from a light wood but in this case are of heavy metal. HRS § 134-51 prohibits the carrying of deadly weapons concealed on the person or within an automobile being used or occupied. Appellant was unable to produce a reconstruction permit and a citation for this offense was issued at a later time.

suspicious bag from within the vehicle, and finally the seizure and identification as marijuana of the contents of the bag. The State attempts to justify the search of the vehicle as incidental to a lawful arrest, which in turn is dependent on whether the nunchaku sticks are in fact a deadly or dangerous weapon within the meaning of HRS § 134-51. But the view of the nunchaku sticks through the window of Appellant's automobile resulted from the action of the police officer in stopping it so that he could approach the window. It is clear that, if this action constituted an unreasonable seizure in violation of the Fourth Amendment or Art. I, Sec. 5 of the Hawaii Constitution, the observation of the nunchaku sticks did not provide valid cause for Appellant's arrest or for the search of the vehicle. *United States v. Brignoni-Ponce,* 422 U.S. 873 (1975); *State v. Barnes,* 58 Haw. 333, 568 P.2d 1207 (1977); *State v. Goudy,* 52 Haw. 497, 479 P.2d 800 (1971); *United States v. Montgomery,* 561 F.2d 875 (D.C. Cir. 1977). Thus the threshold question deals with the initial stop of the vehicle. Since we conclude that the stop constituted an unreasonable seizure and fatally tainted all of the police actions which followed, we do not reach the subsequent questions.

In *State v. Barnes, supra,* we dealt with the permissible limits of a search of an automobile following an investigative stop. Although we held that the stop was constitutionally valid under the facts of that case, we declared that an automobile may be stopped for investigation of possible criminal activity only when there are specific and articulable facts which, when taken together with rational inferences from those facts and measured by an objective standard, warrant a man of reasonable caution to believe that criminal conduct is taking place and that the action taken is appropriate. Since our decision in *Barnes* turned on our determination that the scope of the search had exceeded that which may follow a valid investigatory stop, we did not need to define more precisely the circumstances under which an investigative stop may be made.

We now confirm that the standard which we announced in *Barnes* limits the discretionary actions of police officers in investigating possible violations of laws regulating the opera-

tion of motor vehicles. We reserve for future consideration, however, the constitutional validity of non-discretionary and systematic checks of automobiles and drivers for compliance with documentation and permit requirements. In the case before us, the stop of Appellant's automobile was not pursuant to any order or instruction to the officer, or even any practice of the particular officer, which might be looked to as guiding the exercise of his discretion. Thus our decision is limited to the wholly discretionary decision of an officer to single out one among many automobiles for investigation, with no cause to believe that a violation of law was taking place and nothing to show that the decision was guided by any standard which prevented it from being purely arbitrary.

The standard which we announced in *Barnes* and apply in this case extends to an investigative stop of an automobile the rule of *Terry v. Ohio,* 392 U.S. 1 (1968), where the Supreme Court said that a police officer may place an individual under restraint and search him for weapons when he is able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion upon the individual's privacy (*"Terry* facts"). "As with other categories of police action subject to Fourth Amendment constraints, the reasonableness of such seizures depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce, supra* at 878.

Prior to *Terry,* investigative stops of automobiles in the unguided discretion of police officers, to check compliance with vehicle registration and driver's license requirements, were generally upheld without any showing of cause to believe that a violation existed. *City of Miami v. Aronowitz,* 114 So. 2d 784 (Fl. S.Ct. 1959); *United States v. Berry,* 369 F.2d 386 (3d Cir. 1966); *Rodgers v. United States,* 362 F. 358 (8th Cir.), *cert. denied,* 385 U.S. 993 (1966); *Welch v. United States,* 361 F.2d 214 (10th Cir.), *cert. denied,* 385 U.S. 876 (1966); *Lipton v. United States,* 348 F.2d 591 (9th Cir. 1965). Similar holdings have appeared since *Terry. State v. Holmberg,* 194 Neb. 337, 231 N.W.2d 672 (1975); *accord, State v.*

*Benson,* 198 Neb. 14, 251 N.W.2d 659 (1977); *State v. Allen,* 282 N.C. 503, 194 S.E.2d 9 (1973); *United States v. Turner,* 442 F.2d 1146 (8th Cir. 1971). Other courts, however, since *Terry* have required *Terry* facts in justification of discretionary stops of automobiles for document checks. *United States v. Montgomery, supra; People v. Ingle,* 36 N.Y.2d 413, 330 N.E.2d 39, 369 N.Y.S.2d 67 (1975); *State v. McKinley,* 305 Minn. 297, 232 N.W.2d 906 (S.Ct. 1975); *Commonwealth v. Swanger,* 453 Pa. 107, 307 A.2d 875 (S.Ct. 1973); *People v. James,* 44 Ill. App. 3d 300, 3 Ill. Dec. 88, 358 N.E.2d 88 (1976). Of course, the authority of the police to stop vehicles in cases of observed violations is not in question.

> "In discharging their varied responsibilities for ensuring the public safety, law enforcement officials are necessarily brought into frequent contact with automobiles. Most of this contact is distinctly noncriminal in nature . . . . Automobiles, unlike homes, are subject to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements. As an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order." *South Dakota v. Opperman,* 428 U.S. 364, 367-68 (1976).

In *United States v. Brignoni-Ponce, supra,* the Court dealt with the stop of an automobile by federal Border Patrol officers and concluded that "because of the importance of the governmental interest at stake, the minimal intrusion of a brief stop, and the absence of practical alternatives for policing the border, . . . . when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion." 422 U.S. at 881. Purely random stops to discover illegal immigrants, made without such reasonable suspicion, were viewed as subjecting use of the highways to potentially unlimited interference, solely at the discretion of Border

Patrol officers and beyond the legitimate needs of law enforcement. Nevertheless, it is clear that the limits upon police activity in the course of enforcement of motor vehicle laws have not been set by the Supreme Court:

"Our decision in this case takes into account the special function of the Border Patrol, the importance of governmental interests in policing the border area, the character of roving-patrol stops, and the availability of alternatives to random stops unsupported by reasonable suspicion. Border Patrol agents have no part in enforcing laws that regulate highway use, and their activities have nothing to do with an inquiry whether motorists and their vehicles are entitled, by virtue of compliance with laws governing highway usage, to be upon the public highways. Our decision thus does not imply that state and local enforcement agencies are without power to conduct such limited stops as are necessary to enforce laws regarding drivers' licenses, vehicle registration, truck weights, and similar matters." 422 U.S. at 883, n. 8.

This case requires us to consider whether the legitimate needs of enforcement of the motor vehicle registration and licensing and similar regulatory laws require that police officers possess unlimited discretion to interfere with highway use, without the minimal requirement of reasonable suspicion which the Supreme Court has imposed on the Border Patrol. If investigative stops of motor vehicles for document checks were wholly exempted from the reasonable suspicion test and permitted to be made on a wholly random basis, we would see no effective way to confine such arbitrary stops to investigations of violations of motor vehicle laws. It would not be difficult for any police officer to add to every investigative stop of a vehicle a routine check of its registration and of the driver's license. To give substance as well as form to the protection which both the federal and Hawaii Constitutions extend against capricious interference with the liberty of individuals to operate their vehicles in a lawful manner, the wholly discretionary stop of Appellant's automobile in this case must be held to be invalid.

But we recognize that examination of the registration documents carried in a vehicle may be the only effective way to discover violations of the motor vehicle registration laws. Similarly, requiring drivers to produce licenses for examination may be the only way to discover violations of the licensing laws. Effective enforcement of the registration and licensing laws may require that police officers be permitted to stop vehicles for the sole purpose of document checks and not only in cases of observable violations of other laws which independently justify the stopping of the vehicle. We note, however, that no showing has been made to us that this is true in fact.

Faced with the same dilemma, other courts have adopted or suggested various ways to limit arbitrary or capricious action and misuse of authority in enforcement of motor vehicle laws, while supporting the conclusion that wholly random stops are unreasonable seizures. *United States v. Montgomery, supra; People v. Ingle, supra; State v. McKinley, supra; Commonwealth v. Swanger, supra; People v. James, supra.* In *United States v. Martinez-Fuerte,* 428 U.S. 543 (1976), stops conducted by the Border Patrol for brief questioning routinely conducted at permanent check points were held to be consistent with the Fourth Amendment. The District of Columbia Court of Appeals has said:

"These principles [from the Border Patrol cases], evolved for the governance of the vexing problem of police checks for illegal aliens, can be given appropriate application so as to control police activities in enforcing the motor vehicle laws. An unexpected police stop for a driver's license inspection may cause the same subjective reactions as a stop for any other law enforcement purpose. The same possibilities for police abuse are present in the unchecked power to make stops for asserted 'traffic' purposes. However, the conduct of vehicle stops in accordance with instructions issued by the superior officials as part of a publicly understood program for enforcement of the motor vehicle laws may reduce both police abuse and citizen apprehension to a level consistent with the Fourth Amendment's objectives." *United States v. Montgomery, supra* at 883. (footnotes omitted.)

We do not have before us for evaluation a police procedure which would remove or limit the unguided discretion which the police officer exercised in this case and do not undertake to select among the procedures which are suggested by these cases. However, our decision in this case rejects the suggestion that we should inquire whether the stop was truly for the purpose of checking Appellant's reconstruction permit or was a pretext for investigation of criminal activities not related to the operation of the vehicle. *See State v. Holmberg, supra; State v. Bloom,* 90 N.M. 226, 561 P.2d 925, *rev'd,* 90 N.M. 192, 561 P.2d 465 (1977). A test which involves the court in inquiries into the motivations of police officers is of questionable practicability as a control over police action. Note, Automobile License Checks and the Fourth Amendment, 60 Va. L. Rev. 666 (1976).

The decision in this case also rejects the view, represented by *Palmore v. United States,* 290 A.2d 573 (D.C. App. 1972), *aff'd. on other grounds,* 411 U.S. 389 (1973), that a wholly discretionary stop of a vehicle for motor vehicle law enforcement is reasonable if subsequent detention and investigation is limited strictly to the documents. Arbitrary or capricious police action would not be suppressed merely by limiting what may follow the stop of the vehicle.

The record in this case discloses no facts which warranted the police officer in believing that Appellant's automobile had been reconstructed in violation of the ordinance or that any other unlawful conduct was taking place when he ordered the stop, or even a belief on the part of the police officer that a violation of law was occurring or had occurred. The stop of the vehicle constituted an unreasonable seizure and the evidence so obtained was inadmissible.

Reversed.

*Renee M. L. Yuen,* Deputy Public Defender, for Defendant-Appellant.

*Keith Walker,* Deputy Prosecuting Attorney, *(Charles A. Viviano,* Deputy Prosecuting Attorney, on the brief) for Plaintiff-Appellee.