STATE OF HAWAII, Plaintiff-Appellant *v.* PALANCE POWELL, also known as Pat, Defendant-Appellee

NO. 6787

NOVEMBER 20, 1979

RICHARDSON, C.J., OGATA AND MENOR, JJ.,
RETIRED JUSTICE KOBAYASHI AND CIRCUIT
JUDGE LUM ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY RICHARDSON, C.J.

Defendant-appellee Palance Powell was charged with the offense of promoting a dangerous drug in the third degree in

violation of HRS § 712-1243 (1976). Before trial, Powell moved to suppress certain evidence seized from his automobile at the time of his arrest. After a hearing on said motion, the court below determined that the evidence had been secured through improper means and, accordingly, ruled in the defendant's favor.

We reverse.

On the evening of April 16, 1977, while assisting in the investigation of a suspicious noise complaint in a residential area of Honolulu, Police Officer Bruce Weissich noticed an automobile without taillights turning out of a dead-end street. Following behind this vehicle, Officer Weissich observed that it was proceeding at an unusually slow rate of speed — approximately five to ten miles per hour — and that, upon reaching an intersection, it stopped ten to fifteen feet short of the stop line. Despite an absence of any other vehicular traffic, the driver of the automobile hesitated for approximately ten seconds before executing a turn and continuing on. Some two hundred feet before reaching the next intersection, the automobile's turn signal was activated and, as before, the vehicle stopped ten to fifteen feet short of the stop line. Again, the driver of the vehicle stopped for about ten seconds before negotiating the turn. No other vehicles were seen in the area.

Believing that the driver of the automobile was either lost, experiencing mechanical difficulties with his car, or intoxicated, Officer Weissich then ordered the vehicle to a stop. After identifying himself as a police officer, Weissich requested the sole occupant of the vehicle, defendant Powell, to produce his driver's license. At this time, Powell voluntarily got out of his car and began searching in his wallet for his license. Upon tendering it to the officer, Powell inquired as to why he had been stopped. The officer responded by asking him whether he was lost, and Powell indicated that he did not know where he was.

During his conversation with Officer Weissich, Powell appeared to be intoxicated: his speech was slurred and unresponsive; his eyes were bloodshot and his pupils dilated; he appeared unsteady on his feet; and his shirt was unbuttoned

at the top and bottom. Nevertheless, according to the officer, there was no indication that Powell's apparent intoxication was attributable to the consumption of alcohol. The officer therefore inquired if Powell was on any medication or had any kind of physical defect that would explain his appearance. In reply, Powell indicated that he was taking Valium, and then handed the officer a prescription bottle which he had in his pocket. The bottle contained two tablets and was labeled "Thorazine."

After admitting that he had taken some of the medication that evening and based on his erratic driving and apparent state of inebriation, Powell was then placed under arrest for driving under the influence of drugs.[1] By that time, another officer had arrived at the scene and had joined Weissich and Powell at the rear of Powell's automobile. Upon returning to secure the arrestee's vehicle,[2] Officer Weissich — with the aid of his flashlight — then noticed a crystalline substance in a spoon he had previously seen when Powell initially stepped out of his car. The spoon was located on the floorboard of the vehicle, near the accelerator pedal. Based on his familiarity with narcotics paraphernalia and with various methods of narcotics ingestion, Officer Weissich suspected that the substance on the spoon was somehow related to Powell's apparent drug-induced state of intoxication. Accordingly, he immediately returned to the rear of the vehicle to examine Powell's arms. At this time, he found what appeared to be needle marks on the interior portions of appellee's elbows,

---

[1] Driving under the influence of drugs constitutes a violation of HRS § 291-7 (1976), which provides:

Whoever operates any vehicle while under the influence of any drug to a degree which renders him incapable of operating the vehicle in a careful and prudent manner shall be fined not more than $1,000 or imprisoned not more than one year, or both. The fact that any person charged with a violation of this section, is, or has been, legally authorized to use the drug shall not constitute a defense to such charge.

[2] According to the testimony of Officer Weissich at the trial court's suppression hearing, it is standard police practice to secure a vehicle that is involved in an arrest in order to protect the property of the arrestee.

directly in line with the veins in his arms. Thereupon, Powell was placed under arrest for promoting a dangerous drug.

Following the second arrest, Officer Weissich again returned to Powell's vehicle — this time, to recover the spoon. While seizing the spoon, the officer searched under the driver's seat using his flashlight and came upon a hypodermic syringe and a plastic vial containing a clear liquid. These two items were also recovered at this time.

On July 13, 1977, an Oahu grand jury returned an indictment against Powell charging him with the knowing possession of cocaine, a "dangerous drug" within the meaning of HRS § 712-1240(1)(1976).[3] Thereafter, appellee Powell filed a pretrial motion requesting an order suppressing for use at trial all evidence seized during his arrest and during the subsequent search of his vehicle on the ground that such evidence was secured through illegal means. The court below, on October 25, 1977, granted the motion following a hearing thereon, reasoning, in essence, that Officer Weissich's initial stop of Powell's automobile was unlawful. This appeal followed.

In its brief, the State contends that stopping and detaining appellee's vehicle for purposes of questioning him as to his driving behavior and checking his driver's license was reasonable under the circumstances and not violative of appellee's constitutional rights. Further, it argues that the warrantless search of appellee's car and the subsequent seizure of certain items found therein were justified under exceptions to the warrant requirement.[4]

---

[3] From the record, there is no indication as to which of the three items seized from appellee's automobile contained cocaine or as to whether the prescription bottle produced by appellee prior to his arrest for driving under the influence of drugs contained cocaine. This omission is of no significance given the result we reach in this case. See discussion, infra.

[4] The State raises three alternative theories to justify the warrantless search of appellee's automobile: first, it argues that the items seized were in plain view; secondly, it contends that the search was incident to a lawful arrest; and lastly, it asserts that the search was justified under the so-called "automobile exception" to the warrant requirement.

320

I.

The propriety of the search of appellee's automobile and the subsequent seizures of the spoon, hypodermic syringe, and plastic vial hinges in part upon the validity of the initial stop by Officer Weissich. If it is ultimately determined that the stop was constitutionally objectionable, the items seized from the vehicle — as fruits of an unlawful "seizure" — would be the proper subjects of a suppression order. *See United States v. Brignoni-Ponce,* 422 U.S. 873 (1975); *Wong Sun v. United States,* 371 U.S. 471 (1963); *State v. Boynton,* 58 Haw. 530, 535, 574 P.2d 1330, 1334 (1978).

It is beyond challenge that stopping an automobile and detaining its occupants constitute a "seizure" within the meaning of the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Hawaii Constitution,[5] even though the purpose of the stop is limited and the resulting detention is brief. *See Delaware v. Prouse,* 440 U.S. 648, 653, 99 Sup. Ct. 1391, 1396, (1979); *State v. Bonds,* 59 Haw. 130, 577 P.2d 781 (1978). The legitimacy of such action, therefore, is dependent on whether or not it is found to be reasonable, upon balancing the public interest it promotes and the individual's right to be free from arbitrary interference by government officials. *See Pennsylvania v. Mimms,* 434 U.S. 106 (1977); *Camara v. Municipal Court,* 387 U.S. 523, 536-37 (1967); *State v. Martinez,* 59 Haw. 336, 368, 580 P.2d 1282, 1284-85, (1978).

We believe that the State has a legitimate and substantial interest in promoting the safe use of its streets and highways. Accordingly, its authority to stop vehicles in cases of *observed* traffic or equipment violations cannot be seriously questioned. *State v. Bonds,* 59 Haw. at 135, 577 P.2d at 785. However, when weighed against the individual's Fourth Amendment rights, the State's interest is not so compelling as to justify subjecting every vehicle to seizure at the unrestrained discretion of law-enforcement officials. *See Dela-*

_____

[5] Formerly HAWAII CONST. art. I, § 5, this provision was amended and renumbered in 1978. Const. Convention, 1978, and election November 7, 1978.

*ware v. Prouse,* 440 U.S. at 661, 99 Sup. Ct. at 1400; *State v. Bonds, supra.* As stated by the Supreme Court in Prouse:

An individual operating or travelling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation. Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day travelling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in travelling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed. As *Terry v. Ohio, supra,* recognized, people are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles. See *Adams v. Williams,* 407 U.S. 143, 146 (1972).

440 U.S. at 662-3 (footnote omitted).

In determining the reasonableness of wholly discretionary automobile stops, this court has repeatedly applied the standard set forth in *Terry v. Ohio,* 392 U.S. 1 (1968). *See State v. Bonds, supra; State v. Ogata* 58 Haw. 514, 572 P.2d 1222 (1977); *State v. Barnes,* 58 Haw. 333, 568 P.2d 1207 (1977); *State v. Goudy,* 52 Haw. 497, 479 P.2d 800 (1971). Guided by *Terry,* we stated in *State v. Barnes:*

To justify an investigative stop, short of an arrest based on probable cause, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio, supra,* at 21. The ultimate test in these situations must be whether from these facts, measured by an objective standard, a man of reasonable caution would be warranted in believ-

ing that criminal activity was afoot and that the action taken was appropriate.

58 Haw. at 338, 568 P.2d at 1211 (citations omitted). Faced with precisely the same issue in *Delaware v. Prouse, supra,* the United States Supreme Court recently fashioned a test quite similar to our own, holding:

> [T]hat except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

440 U.S. at 663, 99 Sup. Ct. at 1401. *Cf. United States v. Brignoni-Ponce,* 422 U.S. 873 (1975) (except at the border and its functional equivalents, officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with the rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain illegal aliens).

After carefully scrutinizing the record in this case, we are firmly convinced that the trial court erred in concluding that the officer's investigative stop was unreasonable. At the pretrial hearing, the only testimony adduced was that of Officer Weissich. Upon being questioned as to the circumstances surrounding the initial stop of appellee's vehicle, the officer was able to articulate with specificity certain observations which led him to suspect that the driver of the automobile may have been intoxicated: first of all, the automobile in question was travelling at an abnormally slow rate of speed while repeatedly stopping and signalling prematurely at intersections; secondly, the automobile hesitated for unusually long periods of time before negotiating turns in spite of a complete absence of vehicular traffic. Viewed from an objective standpoint, we believe that the foregoing facts and the rational inferences therefrom were sufficient to provoke a reasonable suspicion that the driver may have been violating the

law: to-wit, operating an automobile while intoxicated.[6] *See State v. Ogata, supra.*

Further, having determined that the initial stop of appellee's vehicle was justified, we also believe that it was reasonable for the officer to request to see appellee's driver's license. When investigating a possible violation of a traffic law, an officer may properly ask a driver to display his license so that he may, in the first instance, determine who he is dealing with and whether such person is qualified to drive. *See* HRS § 286-116 (1976).[7] *Cf. Adams v. Williams,* 407 U.S. 143, 146 (1972) ("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.").

II.

Our finding that the instant investigative action on the part of the police officer was not unreasonable at the outset does not render further examination into the circumstances surrounding this case unnecessary. A governmental intrusion

---

[6] Following the suppression hearing, the learned trial judge issued a written decision in which he concluded that the officer's belief that appellee was lost or that appellee was having car problems was not the real reason for the stop, but that the officer "stopped [appellee] for reasons which were nothing more than a hunch that [he] was up to no good." However, this type of subjective analysis was expressly disapproved of by this court in *State v. Bonds, supra:*

> [O]ur decision in this case rejects the suggestion that we should inquire whether the stop was truly for the purpose of checking Appellant's reconstruction permit or was a pretext for investigation of criminal activities not related to the operation of the vehicle. A test which involves the court in inquiries into the motivations of police officers is of questionable practicability as a control over police action.

59 Haw. at 138, 577 P.2d at 786 (citations omitted).

[7] This section — subsequently amended by Act 91, § 4, 1978 Haw. Sess. Laws — provided in part that "[e]very licensee shall have his driver's license in his immediate possession at all times when operating a motor vehicle, and shall display the same upon demand of a police officer."

"which is reasonable at its inception may violate the constitutional protection against unreasonable searches and seizures by virtue of its intolerable intensity and scope," *State v. Goudy*, 52 Haw. at 503, 479 P.2d at 804. *See Terry v. Ohio*, 392 U.S. at 17-18. For example, in *State v. Barnes, supra,* this court reversed a conviction for promoting a detrimental drug in the first degree after concluding that a bag of marijuana recovered by an arresting officer from the defendant-appellant's automobile was improperly admitted into evidence at trial. In doing so, we held that, although the initial stop of the defendant's vehicle for investigative purposes was reasonable, the search and seizure conducted subsequent to the stop were not justified by the circumstances which rendered the stop permissible *ab initio* or by the circumstances which arose following the initial intrusion. 58 Haw. at 338-39, 568 P.2d at 1211. *See also State v. Joao, Jr.,* 56 Haw. 216, 533 P.2d 270 (1975).

Here, appellee contends that, even if the initial stop of his vehicle for investigative purposes was proper, the subsequent search of the car's interior and the seizure of the spoon, hypodermic syringe and plastic vial located therein were unreasonable because of the failure of the police officer to secure a warrant. We disagree.

Upon being stopped by the officer, appellee voluntarily stepped out of his vehicle to comply with the officer's request to see his driver's license. During the course of conversation with appellee, the officer came to conclude that appellee was in a drug-induced state of intoxication, and thereupon arrested him for the offense of driving under the influence of drugs, a misdemeanor. We believe that based upon the officer's observations of appellee's behavior before and after the initial stop, there was probable cause to make the arrest. The fact that it was made without a warrant does not vitiate the legitimacy of such action. A police officer may make an arrest without a warrant when he has probable cause to believe that a misdemeanor is being, or has been, committed in his presence. *House v. Ane*, 56 Haw. 383, 390, 538 P.2d 320, 325 (1975); *State v. Park*, 50 Haw. 275, 276, 439 P.2d 212, 213 (1968).

At the time of this arrest appellee and Officer Weissich were standing at the rear of appellee's automobile where they were soon joined by another policeman. Subsequently, Weissich returned to the driver's side of the suspect's vehicle to secure its contents. It was then that he viewed a crystalline substance on the spoon he had previously seen on the floorboard on the car, adjacent to the accelerator pedal. This alerted the officer to a possible narcotics violation and, upon going back to check appellee's arms, he found what seemed to be needle marks about the inside of his elbows. At this juncture, appellee was placed under arrest for promoting a dangerous drug. Finally, Weissich again returned to the driver's side of the vehicle to seize the spoon. In addition, he also seized the hypodermic syringe and the liquid-filled vial upon searching under the driver's seat with his flashlight.

We see nothing constitutionally impermissible about these actions on the part of the police officer, notwithstanding that they were not made pursuant to warrant. The officer's observations of the spoon — at the time appellee alighted from his car and at the time the crystalline substance was detected — were both inadvertent and both occurred while the officer had a right to be at his vantage point. Therefore, the warrantless seizure of the spoon and its subsequent admission at trial would be justified under the "plain view" doctrine. See State v. Hook, 60 Haw. 197, 202, 587 P.2d 1224, 1228 (1978); State v. Kaaheena, 59 Haw. 23, 28, 575 P.2d 462, 966 (1978); State v. Stachler, 58 Haw. 412, 417, 570 P.2d 1323, 1327 (1977). Furthermore, it is this court's conclusion that the view of the crystalline substance on the spoon, coupled with the presence of needle marks on appellee's arms, provided the arresting officer with probable cause to arrest appellee for promoting a dangerous drug[8] and with probable cause to believe that other contraband was present in the suspect automobile. We make this finding particularly in light of the

---

[8] Appellee was formally charged under HRS § 712-1243 which provides in part that "[a] person commits the offense of promoting a dangerous drug in the third degree if he knowingly possesses any dangerous drug in any amount."

officer's familiarity with narcotics paraphernalia and methods of ingestion. *See State v. Chong,* 52 Haw. 226, 232, 473 P.2d 567, 571 (1970).

Although we believe that the search beneath the driver's seat and the seizure of the items found there cannot, unlike the spoon, be justified under the "plain view" doctrine, we nevertheless hold that these warrantless intrusions were not unreasonable under the circumstances present.

*Carroll v. United States,* 267 U.S. 132 (1925), is generally recognized as the seminal case for the so-called "automobile exception" to the warrant requirement. *See* Laskey, *Mistating The Exigency Rule: The Supreme Court v. The Exigency Requirement In Warrantless Automobile Searches,* 28 SYRACUSE L. REV. 981 (1977); Williamson, *The Supreme Court, Warrantless Searches, And Exigent Circumstances,* 31 OKLA. L. REV. 110 (1978). *Carroll,* decided during the Prohibition Era, held that a warrantless search of an automobile and the seizure therein of liquor was not repugnant to the Fourth Amendment protection against unreasonable searches and seizures, provided that the seizing officer had probable cause to believe that the suspect automobile was illegally transporting contraband liquor. 267 U.S. 153-56. In rendering its decision, the Supreme Court acknowledged that, for constitutional purposes, there exists

> a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

*Id.* at 153. *See also Arkansas v. Sanders,* _____ U.S. _____, 99 S. Ct. 2586, 2591 (1979); *United States v. Chadwick,* 433 U.S. 1, 12-13 (1977); *South Dakota v. Opperman,* 428 U.S. 364, 367-69 (1976); *Cardwell v. Lewis,* 417 U.S. 583 (1974) (plurality opinion); *Cady v. Dombrowski,* 413 U.S. 433, 441-42 (1973); *Coolidge v. New Hampshire,* 403 U.S. 443, 549-64 (1971); *Chambers v. Maroney,* 399 U.S. 42, 50-52 (1970).

Here; the search in question took place on a public thoroughfare while the subject automobile was in actual transit, and it was closely tied in time and place to the point of arrest. Moreover, the scope of the search was narrowly confined to an area immediately surrounding the spot where the first incriminating object was seized. We feel that, given these facts, the search and seizure involved did not exceed the bounds permitted by the Hawaii and United States Constitutions. The fact that the searching officer was aided by a flashlight in his discovery of the syringe and the vial does not, in this case, undermine the reasonableness of his actions. *See State v. Hanawahine*, 50 Haw. 461, 465-66, 443 P.2d 149, 152-53 (1968).

Having determined the initial stop of appellee's vehicle to be proper and the subsequent search and seizure to be reasonable, the judgment of the lower court is hereby reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

*Arthur Ross*, Deputy Prosecuting Attorney (*Roy K. S. Chang*, Deputy Prosecuting Attorney on the briefs) for Plaintiff-Appellant.

*Edmund Yee*, Special Deputy Public Defender (*Myles T. Yamamoto*, Deputy Public Defender on the brief) for Defendant-Appellee.