STATE OF HAWAII, Plaintiff-Appellee, *v.* MARK S. TEMPLE, Defendant-Appellant

NO. 7045

(CRIMINAL NO. 50833)

SEPTEMBER 13, 1982

RICHARDSON, C.J., NAKAMURA, J., RETIRED
JUSTICE MARUMOTO, IN PLACE OF LUM, J., EXCUSED,
AND RETIRED JUSTICES OGATA AND MENOR
ASSIGNED TEMPORARILY

262

OPINION OF THE COURT BY NAKAMURA, J.

Defendant-appellant Mark S. Temple (defendant) was convicted after a jury trial in the Circuit Court of the First Circuit of having possessed or carried a loaded firearm on a public highway in violation of HRS § 134-6 and of having committed a theft of a firearm in violation of HRS § 708-831(1)(c). The State concedes the trial court committed reversible error by not compelling further deliberation by the jury or not declaring a mistrial when a juror gave an equivocal response during a poll of the jury by defense counsel on whether the verdict returned on Count II of the indictment was consistent with the finding of each of the jurors.[1] But there are other issues posed by defendant's appeal, and these are whether the statute of limitations

---

[1] A document entitled Confession of Error was filed in this court by the Prosecuting Attorney. It reads in part:

Inasmuch as there is serious doubt that Defendant-Appellant was afforded a unanimous verdict by reason of questionable testimony of a single juror during the poll of the jury, the State of Hawaii, by Robert S. Rodrigues, Deputy Prosecuting Attorney, City and County of Honolulu, hereby confesses that error was committed by the trial court when said court did not retire the jury for further deliberations or declare a mistrial as to Count II of the indictment.

The document further prayed for a reversal of the conviction and a remand of the case.

on the latter offense had run prior to the indictment and whether the firearm seized from an automobile driven by the defendant and the statements obtained from him subsequent to the seizure should have been suppressed as evidence. We conclude the trial court properly denied the motion to dismiss the second count of the indictment, but erred when it denied the motion to suppress. We therefore reverse the conviction and the order denying the motion to suppress and remand the case for proceedings not inconsistent with this opinion.

## I.

The two-count indictment against the defendant[2] was premised on the discovery of a loaded handgun in the glove compartment of a motor vehicle being driven by him following a "stop" of the vehicle by the police at about 9:00 p.m. on August 12, 1977. Earlier that day, an unidentified person called the Wahiawa Police Station and informed the police that she had seen a handgun in the glove compartment of a black Chevrolet, license number 7A-8909, parked at 102-E Kilea Place in Wahiawa. The unknown informant further volunteered that the automobile was owned by one Mark Temple.[3]

The foregoing information was given to Officer Robert Miyasato of the station's Plainclothes Detail when he reported for duty at 7:30 p.m. He in turn related the information to Officers Gene Muller and Thomas Vierra, also members of the same unit. The three of them

---

[2] The indictment reads:

COUNT I: On or about the 12th day of August, 1977, in the City and County of Honolulu, State of Hawaii, MARK S. TEMPLE did have in his possession or did carry on a public highway, a firearm loaded with ammunition, thereby committing the offense of Place to Keep Firearms in violation of Section 134-6 of the Hawaii Revised Statutes.

COUNT II: On or about the 12th day of August, 1977, in the City and County of Honolulu, State of Hawaii, MARK S. TEMPLE did intentionally receive, retain or dispose of a firearm, the property of Manuel Vasconcellos, knowing that it had been stolen, with intent to deprive him of the property, thereby committing the offense of Theft in the First Degree in violation of Section 708-831(1)(c) of the Hawaii Revised Statutes.

[3] The defendant, however, was not the registered owner of the vehicle.

then proceeded to the vicinity of 102-E Kilea Place. Muller and Vierra drove past the foregoing address to verify the presence of the black Chevrolet while Miyasato waited in a nearby parking lot that fronted on California Avenue. After noting the presence of the vehicle at the Kilea Place address, Muller and Vierra drove to the parking lot where Miyasato was waiting. While they were in the process of reporting the above fact to him, Miyasato observed a black Chevrolet turning from Kilea Place into California Avenue and proceeding toward Waianae. He immediately gave chase and caught up with the vehicle while it was still on California Avenue.

Officer Miyasato caused the black Chevrolet to slow down and pull into a parking lot on California Avenue by using the siren and the grill lights on his vehicle. When the other car came to a stop, the officer alighted from his car and approached the other vehicle on the driver's side, identified himself to its occupants (the defendant and a female passenger), and ordered them to step out. After they had complied with the order, the defendant was informed of the reason for the stop and asked whether he had a handgun. When he denied he was carrying a firearm, the officer told the defendant that he (the officer) had been aware for some time that there was a handgun in the glove compartment because he had acquired the information earlier from "a very reliable source". When the officer again inquired whether there was a handgun in the compartment, the defendant admitted there was. By this time, Officers Muller and Vierra had arrived on the scene in their vehicles.

Upon securing the foregoing admission, Officer Miyasato opened the glove compartment of the black Chevrolet, seized a loaded .22 caliber pistol therefrom, and thereupon arrested the defendant for violating HRS § 134-6, Place to keep firearms. Officers Miyasato and Vierra then proceeded to conduct a thorough search of the car's interior and trunk, finding a set of license plates in the process. In the meanwhile, the defendant was transported to the police station by Officer Muller.

The subsequent search of the defendant's person at the station resulted in the seizure of eight rounds of .22 caliber ammunition. And a computer check of the seized firearm's serial number against the records of the police department revealed it had been stolen from the residence of its owner on December 13, 1974. The defendant was only then apprised of his constitutional rights, particularly

those described in *Miranda v. Arizona,* 384 U.S. 436 (1966), and he was subjected to further interrogation by a detective. A signed statement containing an admission that the firearm had been purchased three to four years earlier from a juvenile with knowledge that it had been stolen was obtained from the defendant. He further admitted therein that he had placed the handgun in the glove compartment of the black Chevrolet.

Following indictment by the grand jury, the defendant sought to have the statement as well as all other evidence obtained after the stop of the vehicle excluded from trial. He averred there was no valid basis for a stop and as a consequence all of the evidence was tainted and subject to suppression. He also sought to have the theft count dismissed on the ground that the period within which he could have been charged with the offense expired prior to the indictment. All of the motions, however, were denied, and the case proceeded to trial before a jury. The defendant was adjudged guilty on both counts after guilty verdicts were returned by the jury. His timely appeal to this court followed.

The dispositive question on the issue related to the statute of limitations is whether the crime charged here, theft of a firearm in violation of HRS § 708-831,[4] was a continuing offense, and the dispositive question on the suppression issue is whether there were

---

[4] HRS § 708-831 (1976) read in relevant part:

*Theft in the first degree.* (1) A person commits the offense of theft in the first degree if he commits theft:

.  .  .  .

(c) Of a firearm; or

.  .  .  .

(2) Theft in the first degree is a class C felony except in the event of extortion, in which case theft in the first degree is a class B felony.

Theft is defined by HRS § 708-830 (1976), which read in pertinent part:

*Theft.* A person commits theft if he does any of the following:

.  .  .  .

(8) Receiving stolen property. He intentionally receives, retains, or disposes of the property of another, knowing that it has been stolen, with intent to deprive the owner of the property. It is prima facie evidence that a person knows the property to have been stolen if, being a dealer in property of the sort received, he acquires the property for a consideration which he knows is far below its reasonable value.

reasonable grounds for stopping and detaining the defendant while he was operating a motor vehicle on a public highway.

## II.

We initially address the defendant's claim that his prosecution for the alleged theft of a firearm is barred by the three-year statute of limitations applicable to the offense, a class C felony. *See* HRS § 701-108.

Although the indictment in this case was filed within six months of his arrest on August 12, 1977, the defendant nevertheless argues the prosecution came too late. The evidence in the case, he says, establishes that the offense was committed more than three years prior to the filing of the indictment on January 11, 1978. To be sure, the record indicates the weapon was stolen from the residence of its owner on December 13, 1974 and the defendant admitted purchasing it some three or four years before the arrest. Claiming this shows that every element of a theft, as defined by HRS § 708-830(8), occurred when the stolen firearm was "received and retained", the defendant asserts the State failed to prove the prosecution was commenced in time. We do not find the argument convincing, for the crime set forth in Count II of the indictment was a continuing offense that terminated only when the weapon was seized from the glove compartment.

Though HRS § 708-830(8) is entitled "Receiving stolen property", its proscriptions are broader than its heading. A person commits an offense defined therein if he "intentionally receives, retains, or disposes of the property of another, knowing that it has been stolen, with intent to deprive the owner of the property." *See* note 4 *supra*. Theft may therefore be accomplished by either the receipt, retention, or disposal of stolen property, for each act in itself is consistent with an intent to deprive another of his property.[5]

---

[5] The Hawaii Penal Code's Commentary on HRS §§ 708-830 to -833 reads in relevant part:

*Receiving stolen property.* Subsection (8) is based upon the premise that if the prosecution can demonstrate the requisite intent to deprive the owner of his property, it makes little difference whether the defendant engaged in theft

The terms "receive" and "dispose" comprehend acts that essentially are of a transitory nature or brief duration. While "retain" may likewise denote momentary control of an object, the term primarily describes an ongoing course of conduct. Its meaning is "to hold or continue to hold in possession or use : continue to have, use, recognize, or accept : maintain in one's keeping." *Webster's Third New International Dictionary* 1938 (1967). And we can only infer its inclusion in HRS § 708-830(8) connotes a legislative design to make an aspect of theft a continuing crime. *See State v. Reeves,* 264 Ark. 622, 626, 574 S.W.2d 647, 649 (1978), *cert. denied,* 441 U.S. 964 (1979); *Commonwealth v. Farrar,* 271 Pa. Super. Ct. 434, 441-42, 413 A.2d 1094, 1098 (1979); *cf. Williams v. Superior Court,* 81 Cal. App.3d 330, 146 Cal. Rptr. 311 (1978) (concealment of stolen property may be a continuing offense); *State v. Ellerbe,* 217 La. 639, 47 So.2d 30 (1950) (concealment and possession of stolen property are continuing offenses); *State v. Williams,* 211 Neb. 650, 319 N.W.2d 748 (1982) (possession of a firearm is a continuing offense). *See generally* 22 C.J.S. *Criminal Law* § 1, at 6 (1961) for a definition of "continuing offense".[6]

The second count of the indictment charged that the defendant "did intentionally receive, retain or dispose of" a stolen firearm. It thus alleged he had been implicated in a continuing course of illegal conduct, which ostensibly ran its course when the firearm was seized by the police. HRS § 701-108(4) provides that:

An offense is committed either when every element occurs,

---

directly (e.g., obtained the property directly from the owner) or did so indirectly through the mediation of another person. It should be sufficient to constitute a form of theft that the actor knows that the property was stolen when he has control over it and that he intends to deprive the owner of its value. The actor may accomplish his intent through receipt, retention, or disposal, all of which are acts consistent with an intent to deprive. If the actor is a dealer in the type of property received, the fact that he acquired the property for grossly inadequate consideration is made prima facie evidence that the actor knew of the previous theft.

[6] The definition reads:

*A continuing offense* is a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy; an offense which continues day by day; a breach of the criminal law, not terminated by a single act or fact, but subsisting for a definite period and intended to cover or apply to successive similar obligations or occurrences.

22 C.J.S. *Criminal Law* § 1, at 6 (footnotes omitted).

or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated. Time starts to run on the day after the offense is committed.

Since "a legislative purpose to prohibit a continuing course of conduct plainly appears," and the pertinent course of·conduct terminated on August 12, 1977, the prosecution was commenced well within the prescribed limitation period.

### III.

We turn to the remaining question of whether the statement obtained from the defendant and other evidence seized by the police in this case should have been suppressed. The defendant's thesis is that the stop of the black Chevrolet was not justified; he consequently claims all of the evidence that flowed therefrom was excludable. We would have to agree.

### A.

"[N]otions that the Fourth Amendment does not come into play at all as a limitation upon police conduct if the officers stop short of something called a 'technical arrest' or a 'full-blown search'," *Terry v. Ohio,* 392 U.S. 1, 19 (1968), were dispelled when the Supreme Court issued its decisions in the foregoing landmark case and a companion case, *Sibron v. New York,* 392 U.S. 40 (1968). And "[i]t is beyond challenge that stopping an automobile and detaining its occupants constitute a 'seizure' . . . even though the purpose of the stop is limited and the resulting detention is brief. *See Delaware v. Prouse,* 440 U.S. 648, 653, 99 Sup. Ct. 1391, 1396 (1979); *State v. Bonds,* 59 Haw. 130, 577 P.2d 781 (1978)." *State v. Powell,* 61 Haw. 316, 320, 603 P.2d 143, 147 (1979); *Colorado v. Bannister,* 449 U.S. 1, 4 n.3 (1980). For "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio, supra,* 392 U.S. at 16. "As with other categories of police action subject to Fourth Amendment constraints, the reasonableness of such seizures depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-*

*Ponce*, 422 U.S. 873, 878 (1975); *State v. Powell, supra*, 61 Haw. at 320, 603 P.2d at 147.

The precise question in *Terry* was "whether it is always unreasonable for a policeman to seize a person and subject him to a limited search for weapons unless there is probable cause for an arrest." *Terry v. Ohio, supra*, 392 U.S. at 15. The Court's response to this query was no, as it saw a "need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest." *Id.* at 24. Its narrowly drawn holding was:

> We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken.

*Id.* at 30-31.

The foregoing precepts were applied more broadly thereafter in *Adams v. Williams*, 407 U.S. 143 (1972), where the stop and frisk was premised on information furnished by an informant rather than on the officer's personal observation. There, a police officer was on motor patrol duty in a high-crime area of Bridgeport, Connecticut during the early morning hours. A person known to the officer approached the patrol car and informed him that an individual seated in a nearby vehicle was carrying narcotics and had a gun at his waist. The officer thereupon proceeded to the nearby vehicle to investigate the report, tapped on the car's window, and asked its occupant to open the door. When the occupant rolled the window down instead, the officer reached into the car and removed a loaded firearm from the occupant's waistband. The gun had not been

visible from outside the vehicle, but it was precisely where the informant had indicated. The officer then arrested the individual for unlawful possession of a firearm. In upholding the seizure of the gun, the Supreme Court eschewed a suggestion that reasonable cause for a stop and frisk could only be grounded on an officer's personal observation. Yet the Court did not consider an anonymous tip sufficient cause for a forcible stop, as it stated:

> Applying . . . [the] principles [enunciated in *Terry*] to the present case, we believe that . . . [the officer] acted justifiably in responding to his informant's tip. The informant was known to him personally and had provided him with information in the past. This is a stronger case than obtains in the case of an anonymous telephone tip. The informant here came forward personally to give information that was immediately verifiable at the scene. Indeed, under Connecticut law, the informant might have been subject to immediate arrest for making a false complaint had . . . [the officer's] investigation proved the tip incorrect. Thus, while the Court's decisions indicate that this informant's unverified tip may have been insufficient for a narcotics arrest or search warrant, see, *e.g., Spinelli v. United States,* 393 U.S. 410 (1969); *Aguilar v. Texas,* 378 U.S. 108 (1964), the information carried enough indicia of reliability to justify the officer's forcible stop of . . . [the defendant].

*Id.* at 146-47 (footnote omitted). A forcible stop of a person suspected of criminal activity may therefore be predicated upon an informer's word, provided the information carries "enough indicia of reliability." *Id. Cf. United States v. Cortez,* 449 U.S. 411, 417 (1981) ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.").

### B.

The defendant in *State v. Joao,* 55 Haw. 601, 525 P.2d 580 (1974), successfully challenged an investigative stop of an automobile premised solely on information supplied by an unidentified informant. We noted in our decision that while *Terry, Sibron,* and *Adams v. Williams*

permit a police officer, under very limited circumstances, to stop

and frisk an individual on the basis of reliable information short of probable cause, they do not go so far as to hold that a law enforcement officer may use unreliable, unsubstantiated, conclusory hearsay to justify an invasion of an individual's liberty.

*Id.* at 603, 525 P.2d at 582. Observing *Terry*'s mandate that a governmental intrusion into a person's constitutionally protected interests is only justified when a police officer can " 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion'," *id.* at 605, 525 P.2d at 583 (quoting *Terry v. Ohio, supra,* 392 U.S. at 21), we affirmed the suppression of evidence seized from the defendant's vehicle after the investigative stop.

The anonymous telephone call in this case likewise failed to rise above the level of unsubstantiated and conclusory hearsay.

Though the informer indicated, according to the officer's testimony, that . . . [she] knew this from personal observations, . . . [she] gave absolutely no indication as to whether these observations had been made immediately prior to the tip or some weeks, or even months earlier. Without an adequate anchor, as to time and place, the reliability of this information becomes greatly attenuated.

*State v. Joao, supra,* 55 Haw. at 604, 525 P.2d at 583. And though Officer Miyasato claimed he had previously received information to similar effect from "a very reliable source," there was no attempt to establish its reliability. "[T]he officer's testimony merely state[d] this critical factor as a conclusion. Without more, this bald assertion . . . [could not have] resurrect[ed] information of otherwise questionable reliability." *Id.*

The circumstances here do not approximate the fact situations in *State v. Goudy,* 52 Haw. 497, 479 P.2d 800 (1971); *State v. Kea,* 61 Haw. 566, 606 P.2d 1329 (1980); and *State v. Kuahuia,* 62 Haw. 464, 616 P.2d 1374 (1980). Although anonymous telephone tips served as grounds for the investigative stops there, the information from the unknown informants "carried enough indicia of reliability to justify the . . . forcible stop," *Adams v. Williams, supra,* 407 U.S. at 147, or other factors tending to corroborate the defendant's involvement in criminal activity were present.

The anonymous call in *State v. Goudy* was merely one of the

factors "in the totality of circumstances which made the decision of . . . [the police officers] to stop the . . . [automobile] and approach its occupants for questioning reasonable." 52 Haw. at 501, 479 P.2d at 803. "The informant's descriptions of both the vehicle and its male occupant [in *State v. Kea*] were verified by the police. Additionally, it was determined, before any stop was made, that the vehicle the defendant was driving bore two different license numbers." 61 Haw. at 569, 606 P.2d at 1331. This in itself could have furnished cause "for stopping the defendant for investigative purpose. *See* HRS § 249-11." *Id.* The information received in *State v. Kuahuia* was "that a local male in a white Datsun or Toyota sedan bearing license number FT-4398 had just been seen in the Liliha Square Shopping Center with a rifle in the back of the car." 62 Haw. at 464, 616 P.2d at 1374. Hence, the information was adequately anchored as to both time and place. Moreover, the police responded immediately to the call, and an officer saw the rifle as he approached the stopped vehicle.

But no reasonable grounds for an investigative stop were extant in the case at bar, and we conclude the detention of the defendant constituted an illegal seizure that "fatally tainted all of the police actions which followed." *State v. Bonds,* 59 Haw. 130, 133, 577 P.2d 781, 784 (1978); *see United States v. Brignoni-Ponce, supra; Wong Sun v. United States,* 371 U.S. 471 (1963); *State v. Boynton,* 58 Haw. 530, 535, 574 P.2d 1330, 1334 (1978).

The conviction of the defendant and the order denying the motion to suppress are reversed. The case is remanded to the circuit court for proceedings not inconsistent with this opinion.[7]

*Thomas Wong (Roy T. Ogawa* and *Bruce A. Masunaga* on opening brief), Deputy Public Defenders, for defendant-appellant.

*Arthur E. Ross,* Deputy Prosecuting Attorney, for plaintiff-appellee.

---

[7] We realize that the suppression of the evidence will probably foreclose further prosecution. But as we noted in State v. Furuyama, 64 Haw. 109, 122 n.9, 637 P.2d 1095, 1104 n.9 (1981), this would be a consequence of the exclusion of the evidence, the proper remedy for an unreasonable seizure, and not because the prosecution is barred altogether.