933 P.2d 632

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Reynaldo VALLESTEROS, Defendant–Appellee.**

No. 18918.

Supreme Court of Hawai'i.

March 6, 1997.

Reconsideration Denied March 25, 1997.

James M. Anderson, Deputy Prosecuting Attorney, on the briefs, Honolulu, for plaintiff-appellant.

Joyce K. Matsumori–Hoshijo, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

Plaintiff-appellant State of Hawai'i (the prosecution) appeals from the First Circuit Court's order granting Defendant-appellee Reynaldo Vallesteros's (Vallesteros) Motion for Reconsideration of Order Denying Motion to Suppress Items of Evidence. On appeal, the prosecution contends the circuit court erred when it suppressed a handgun that police observed after they ordered Vallesteros out of his car to arrest him for driving without a license (DWOL), a violation of Hawai'i Revised Statutes (HRS) § 286–102.[1] For the reasons discussed below, we vacate the suppression order, remand for trial, and overrule *State v. Bolosan,* 78 Hawai'i 98, 890 P.2d 685 (App.1994), *aff'd in part and rev'd in part* 78 Hawai'i 86, 890 P.2d 673 (1995), and *State v. Veniegas,* 80 Hawai'i 75, 905 P.2d 50 (App.1995), in part.

## I. BACKGROUND

While patrolling the Kalihi area on January 25, 1994, at approximately 11:25 a.m., Honolulu Police Department (HPD) Officer Lee Kitano (Officer Kitano) observed the passenger in the vehicle in front of him toss what appeared to be a cigarette butt out of the passenger's side window. Intending to cite both the passenger and the driver for littering from vehicles,[2] Officer Kitano turned on his lights and siren and stopped the vehicle as it turned onto Dillingham Boulevard from Kalihi Street.

Officer Kitano explained to Vallesteros, the driver of the car, that his female companion had thrown something out of the window and requested Vallesteros's driver's license, no-fault insurance card, and registration. Police Officer Donald Stafford (Officer Stafford) arrived at the scene and positioned himself near the passenger side of the vehicle to provide "cover" for Officer Kitano. Vallesteros produced the registration and no-fault

---

**1.** HRS § 286–102 (1993) provides in pertinent part:

> **Licensing.**
>
> (a) No person ... shall operate any category of motor vehicles listed in this section without first being appropriately examined and duly licensed as a qualified driver of that category of motor vehicles.
>
> (b) A person operating the following category or combination of categories of motor vehicles shall be examined as provided in section 285–108 and duly licensed by the examiner of drivers:
>
> \* \* \*

> (3) Passenger cars of any gross vehicle weight rating, buses designed to transport fifteen or fewer occupants, and trucks and vans having a gross vehicle weight rating of ten thousand pounds or less [.]

**2.** HRS § 291C–132, Littering from vehicles, provides in pertinent part:

> (a) No person shall throw, place, or drop litter from a vehicle on any highway. *The driver* of the vehicle may be cited for any litter thrown, placed, or dropped from the vehicle.

(Emphasis added.)

information, but informed Officer Kitano that he did not have a license.

When Officer Kitano asked Vallesteros for his name and address, Vallesteros complied but gave the name "Velasquez." Upon checking with HPD Dispatch, Officer Kitano confirmed that "Reynaldo Velasquez" was not a licensed driver and directed Officer Stafford to arrest Vallesteros for DWOL. Officer Stafford informed Vallesteros that he was under arrest and ordered him out of the vehicle. As Vallesteros opened the car door to comply with the request, Officer Stafford observed him make a kicking motion with one leg, as if Vallesteros were trying to shove something underneath the seat. Officer Stafford grabbed Vallesteros by the arm, looked in the car, and spotted a revolver on the floor in front of the driver's seat.

Subsequently, on August 10, 1994, Vallesteros was indicted for place to keep firearm loaded with ammunition (Count I), in violation of HRS §§ 134–6(d) and (e), and DWOL (Count II). On February 6, 1995, Vallesteros filed a motion to suppress the handgun. He argued that the police had no authority to order him from the vehicle for DWOL and, because the handgun became visible only after he exited his car, it should be suppressed as evidence.

Vallesteros cited to the decision of the Intermediate Court of Appeals (ICA) in Bolosan, supra, to support his argument. At that time, Bolosan was on appeal by writ of certiorari to this court. This court, however, did not address the issue of police authority to order a driver out of a car for DWOL.[3] State v. Bolosan, 78 Hawai'i 86, 88 & n. 4, 890 P.2d 673, 675 & n. 4. Consequently, the circuit court concluded that the Supreme Court had let stand the portion of the ICA's decision that held that police are not authorized to physically arrest or order an individual out of a vehicle for the offense of DWOL.

On appeal, the prosecution claims that Hawaii's statutory and case law do, indeed, au-

thorize police officers to arrest a person for DWOL and urges this court to overrule the ICA's holding in Bolosan. The prosecution cites the following conclusions of law (COLs) as erroneous:

2. However, under the Intermediate Court of Appeals' (ICA) holding in State v. Bolosan ... the police are not authorized to physically arrest a person for the offense of DWOL, and therefore cannot order such person out of his or her vehicle based on a DWOL offense.

3. On March 7, 1995, the Hawaii Supreme Court in State v. Bolosan ... did not review and therefore let stand that portion of the ICA's Bolosan decision which held that the police are not authorized to physically arrest a person for the offense of DWOL.

4. Therefore, under current Hawaii law, a police officer is not authorized to order a person out of his or her vehicle and physically arrest that person for the offense of DWOL.

5. Accordingly, Officer Stafford's order that [Vallesteros] exit his vehicle in order to be arrested for DWOL was not valid under current Hawaii law.

. . . .

7. Accordingly, the court concludes that the firearm in the instant case was unlawfully seized and must be suppressed.

8. The court therefore hereby grants the instant motion for reconsideration of its prior order denying Defendant's motion to suppress items of evidence filed herein on February 6, 1995.

## II. STANDARDS OF REVIEW

■ No facts are disputed on appeal, nor is the legality of the stop of Vallesteros's car questioned. Thus, the trial court's findings of fact are the operative elements of this case. Leibert v. Finance Factors, Ltd., 71 Haw. 285, 288, 788 P.2d 833, 835, reconsider-

---

3. We granted Bolosan's application for certiorari on the issue whether an investigative stop could be justified on a basis never actually relied on by the police officer. We held that such a stop could be justified if, from the perspective of a similarly situated reasonable officer, the motorist's conduct also could have given rise to an objectively reasonable suspicion that another of-

fense was being committed. We also noticed plain error and overruled State v. Palpallatoc, 71 Haw. 178, 787 P.2d 214 (1990), holding that the state must prove beyond a reasonable doubt that a driver knew, at the time he or she was driving a vehicle, that it was not insured. Bolosan, 78 Hawai'i at 90–91, 890 P.2d at 677–78.

*ation denied,* 71 Haw. 664, 833 P.2d 899 (1990). COLs are not binding upon an appellate court and, therefore, we review them *de novo* under the "right/wrong" standard. *State v. Tuipuapua,* 83 Hawai'i 141, 145, 925 P.2d 311, 315 (1996); *State v. Bowe,* 77 Hawai'i 51, 53, 881 P.2d 538, 541 (1994). Moreover, a COL will not be overturned if supported by the trial court's findings of fact and the application of the correct rule of law. *Id.*

## III. *DISCUSSION*

█ The question we must answer on appeal is under what circumstances, in light of our state and federal constitutions, statutes, and case law, may a police officer order a driver out of a vehicle for a traffic offense. The prosecution claims, first, that pursuant to HRS §§ 803–5(a) and (b) (1993),[4] HRS § 803–6(b) (1993),[5] and *State v. Kapoi,* 64 Haw. 130, 637 P.2d 1105 (1981), police have the authority to arrest a person without a warrant for all traffic-related felonies, misdemeanors, petty misdemeanors, and violations. DWOL is a misdemeanor.[6] Second, the prosecution argues that the ICA's interpretation of HRS § 286–10 (1993) in *Bolosan*— holding that police lack the authority to order a person out of his or her car to be

**4.** HRS § 803–5 provides:

[**Arrest b]y police officer without a warrant.** (a) A police officer or other officer of justice, may, without a warrant, arrest and detain for examination any person when the officer has probable cause to believe that such person has committed any offense, whether in the officer's presence or otherwise.

(b) For purposes of this section, a police officer has probable cause to make an arrest when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that a crime has been or is being committed.

**5.** HRS § 803–6 provides in pertinent part:

**(a) Arrest, how made.** (a) At or before the time of making an arrest, the person shall declare that the person is an officer of justice, if such is the case....

(b) In any case in which it is lawful for a police officer to arrest a person without a warrant for a misdemeanor, petty misdemeanor or violation, the police officer may, but need not, issue a citation in lieu of the requirements of (a), if the police officer finds and is reasonably satisfied that the person:

(1) Will appear in court at the time designated;

(2) Has no outstanding arrest warrants which would justify the persons's detention or give indication that the person might fail to appear in court; and

(3) That the offense is of such nature that there will be no further police contact on or about the date in question, or in the immediate future.

**6.** We reach the conclusion that DWOL is a misdemeanor only by looking at two other statutes, HRS § 701–107 and § 286–136, which provide in pertinent part:

**§ 286–136. Penalty.** *Whoever violates section 286–102 ... shall be fined not more than $1,000 or imprisoned not more than one year, or*
both. Whoever violates any other section in this part shall be fined not more than $1,000.

**§ 701–107 Grades and classes of offenses.** (1) An offense defined by this Code of by any other statute of this State for which a sentence of imprisonment is authorized constitutes a crime. Crimes are of three grades: felonies, misdemeanors, and petty misdemeanors....

....

(3) *A crime is a misdemeanor if it is so designated in this Code or in a statute other than this Code enacted subsequent thereto, or if it is defined in a statute other than this Code which provides for a term of imprisonment the maximum of which is one year.*

(4) A crime is a petty misdemeanor if it is so designated in this Code or in a statute other than this Code enacted subsequent thereto, or if it is defined by a statute other than this Code which provides that persons convicted thereof may be sentenced to imprisonment for a term of which the maximum is less than one year.

(5) An offense defined by this Code or by any other statute of this State constitutes a violation if it is so designated in this Code or in the law defining the offense or if no other sentence than a fine, or fine and forfeiture or other civil penalty, is authorized upon conviction or if it is defined by a statute other than this Code which provides that the offense shall not constitute a crime. A violation does not constitute a crime, and conviction of a violation shall not give rise to any civil disability based on conviction of a criminal offense.

(6) *Any offense declared by law to constitute a crime, without specification of the grade thereof or of the sentence authorized upon conviction, is a misdemeanor.*

\* \* \*

(Emphases added). Therefore, because DWOL is punishable by up to one year imprisonment, and the grade is not specified, it is a misdemeanor under HRS § 701–107. In contrast, driving without a license in *possession,* a violation of HRS § 286–116, is a violation, because the penalty is a fine not in excess of $1,000.00.

**300**

arrested for DWOL—is wrong as a matter of law and should be overturned.

In contrast, Vallesteros maintains that HRS Chapter 286, and not Chapter 803, governs arrest procedures for traffic offenses. He also asserts that the ICA's analysis of HRS § 286–10 and holding in *Bolosan* were correct as a matter of law.

### A. Both Chapters 286 and 803 of the HRS Provide for Citation Arrests and Custodial Arrests

#### 1. Applicable Rules of Statutory Construction

■ We review statutes *de novo* under the "right/wrong" standard. *Shimabuku v. Montgomery Elevator Co.*, 79 Hawai'i 352, 357, 903 P.2d 48, 52 (1995). When construing a statute, the starting point is the language of the statute itself. *Richardson v. City & County of Honolulu*, 76 Hawai'i 46, 63, 868 P.2d 1193, 1210, *reconsideration denied*, 76 Hawai'i 247, 871 P.2d 795 (1994). The court's "foremost obligation is to ascertain and give effect to the intention of the legislature," *Crosby v. State Dept. of Budget and Finance*, 76 Hawai'i 332, 340, 876 P.2d 1300, 1308 (1994), *cert. denied*, — U.S. —, 115 S.Ct. 731, 130 L.Ed.2d 635 (1995) (internal quotation marks and citations omitted), which we discern primarily from the language of the statute itself, although we may consider other sources. *Shimabuku*, 79 Hawai'i at 357, 903 P.2d at 52. "[W]e must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." *Mathewson v. Aloha Airlines, Inc.*, 82 Hawai'i 57, 71, 919 P.2d 969, 983 (1996) (citation and internal quotation marks omitted).

#### 2. The HRS Provides for Custodial Arrests and Citation Arrests.

■ As a preliminary matter, we address the prosecution's contention that the plain language of HRS § 286–10 merely obligates the police to issue a citation to those they stop for traffic violations *in addition* to taking them into physical custody, not in lieu of doing so. HRS § 286–10 provides:

**Arrest or citation.** *Except when required by state law to take immediately before a district judge a person arrested for violation of any provision of this chapter,* including any rule pursuant to this chapter, any ... enforcement officer, *upon arresting a person for violation of any provision of this chapter,* including any rule adopted pursuant to this chapter *shall issue to the alleged violator a summons or citation* printed in the form hereinafter described, warning the alleged violator to appear and answer to the charge against the alleged violator at a certain place and at a time within seven days after such arrest.

(Emphases added.) The prosecution's view is unsound for several reasons.

First, to construe HRS § 286–10 to mean that police officers may take alleged violators into physical custody and *simultaneously* issue them a citation would violate

> a cardinal rule of statutory construction [which is] that courts are bound to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute.

*State v. Ortiz*, 74 Haw. 343, 351–52, 845 P.2d 547, 551–52, *reconsideration denied*, 74 Haw. 650, 849 P.2d 81 (1993) (citations omitted). To mandate a physical arrest concurrent with the issuance of a citation under HRS § 286–10 would render the citation requirement "superfluous or surplusage," *State v. Kwak*, 80 Hawai'i 297, 301, 909 P.2d 1112 (1995), because the very purpose of a citation is to dispense with the need for a physical arrest.

■ Second, a review of the plain language of HRS §§ 286–10, 803–6(b), and their respective legislative histories indicates that the legislature contemplated two forms of traffic arrests: citation arrests and physical arrests. Either type requires some degree of physical detention of the person—one is simply more intrusive than the other. For example, the legislative history of HRS § 286–10 provides:

> [The new law p]rovides that except when state law or rule thereunder *requires* that

a person arrested for violation of the highway safety law must be taken immediately before a district judge, any person authorized to enforce the highway safety law *shall issue a summons or citation* on a printed form required by law, to the alleged violator, warning the violator to appear and answer to the charge. . . .

*Digest and Index of Laws Enacted* 104 (1979) (emphases added). This concept is echoed in the history of HRS § 803-6(b), which states that the purpose of the bill was *to permit the use of a citation in lieu of a physical arrest.* The *citation arrest* is presently in use in several jurisdictions as an alternative to what many believe is an inequitable system which includes *arrest, physical custody, and bail procedures.* The *citation arrest,* in lieu of *physical arrest* and incarceration is not unique to . . . Honolulu. *Citations are presently issued for certain offenses such as traffic,* litter law, leash law, fish and game, airport ramp, harbor boating and industrial safety violations.

Sen.Stand.Com.Rep. No. 545, in 1975 Senate Journal, at 1040 (emphases added).

■■■ Finally, the prosecution's claim that the word "arrest" in HRS § 286-10 means actual physical custody is based on an extremely narrow interpretation of the term and is unsupported by Hawai'i case law. It is well-settled in this jurisdiction that a "vehicular stop followed by police questioning of the driver constitutes a seizure for the purposes of the fourth and fourteenth amendments." *Kernan,* 75 Haw. at 37, 856 P.2d at 1225; *see also State v. Kearns,* 75 Haw. 558, 566, 867 P.2d 903, 907 (1994); *State v. Wyatt,* 67 Haw. 293, 299, 687 P.2d 544, 549 (1984). Moreover, "[a]n arrest occurs where the defendant clearly understands that he is not free to go and no 'magic words' such as, 'I place you under arrest,' are required." *State v. Ortiz,* 4 Haw.App. 143, 153, 662 P.2d 517, 525 (1983), *aff'd,* 67 Haw. 181, 683 P.2d 822 (1984) (citations omitted). Accordingly, we

hold that an "arrest" may involve either (1) taking the alleged violator into extended physical custody or (2) issuing the individual a citation. For the purpose of clarity, when we use the word "arrest" in this opinion, we refer to physical arrest.

B. *HRS §§ 803-5, 803-6, and 286-10 Authorize Police Officers to Order Individuals Out of Vehicles for Traffic Criminal Offenses, but not for Traffic Violations.*

1. *Law Enforcement Personnel May not Arrest Individuals for Traffic Violations.*

■■ The plain language of HRS § 803-5 permits officers to arrest those individuals whom they believe have committed or are currently committing a crime, *i.e.,* a felony, misdemeanor, or petty misdemeanor. *See supra* note 5. The prosecution, however, cites the language of 803-6(b) and *State v. Kapoi,* 64 Haw. 130, 637 P.2d 1105 (1981), for the proposition that police may arrest those who commit violations, not just crimes, in the officers' presence. *Id.* at 136, 637 P.2d at 1110. *See also supra* note 6. We agree, but only insofar as the offense is not a traffic-related violation.

In *Kapoi,* the defendant contested the legality of his arrest for simple trespass, a violation. He argued that trespass was not a "crime" and, thus, no statutory authority existed for police to arrest him. This court held that HRS §§ 803-5 and 803-6, when read *in pari materia,* allow police officers either to arrest the alleged violator or to issue a citation in lieu of arrest, primarily if they believe the individual will appear in court. *Id.* at 136-37, 637 P.2d at 1111. Nevertheless, extension of this analysis to traffic violations would ignore not only this court's holding in *State v. Kim,* 68 Haw. 286, 711 P.2d 1291 (1985), but the legislative intent, discussed *supra,* underlying the enactment of HRS §§ 286-10 and 803-6(b).[7]

---

7. Additionally, application of the prosecution's interpretation of HRS § 286-10 would lead to absurd results. *See Sato v. Tawata,* 79 Hawai'i 14, 23, 897 P.2d 941, 950 (1995) (Ramil, J., dissenting) (citing *Richardson,* 76 Hawai'i at 60,

868 P.2d at 1207). Police officers would be *required* to take into physical custody those whom they cite for any violation of Chapter 286, including operation of a vehicle without a certificate of inspection and riding a motor scooter

In *Kim*, a police officer stopped the defendant for running a red light and ordered him out of the car. When the officer realized the defendant had been drinking, he administered a field sobriety test, which the defendant failed. This court reversed the driver's conviction and held that "a police officer must have at least a reasonable basis of specific articulable facts to believe a crime has been committed to order a driver out of a car after a traffic stop." *Id.* at 290, 711 P.2d at 1294. *Kernan v. Tanaka*, 75 Haw. 1, 856 P.2d 1207 (1993), *cert. denied*, 510 U.S. 1119, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994), reiterated the rule that a "traffic violation in and of itself does not supply reasonable articulable facts to support an order to exit the vehicle." *Id.* at 38, n. 22, 856 P.2d at 1226, n. 22. Therefore, the prosecution's assertion that HRS §§ 286–10, 803–5, and 803–6 authorize law enforcement personnel to arrest those who commit traffic violations is incorrect in light of *Kim* and *Kernan*.

■ Finally, even if the language of HRS §§ 286–10 and 803–6 were prone to the interpretation advanced by the prosecution, "[w]e construe penal statutes narrowly, considering them in the light of precedent, legislative history, and common sense." *State v. Gaylord*, 78 Hawai'i 127, 137, 890 P.2d 1167, 1177 (1995); *see also Ortiz*, 74 Haw. at 352, 845 P.2d at 552. "[W]hen language ... reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted." *State v. Rodgers*, 68 Haw. 438, 444, 718 P.2d 275, 278 (1986) (citations and internal quotation marks omitted). Assuming, *arguendo*, that HRS § 286–10 could be

read two different ways—either *requiring* police to issue a citation in addition to physically arresting the individual for a traffic violation, or permitting the issuance of a citation *in lieu of* taking the person into physical custody—the latter construction prevails. The result is clearly more favorable to the alleged violator.

### 2. Police Officers May "Order Out" or Arrest Individuals for Traffic Criminal Offenses.

■ Alternatively, the prosecution argues that, at the very least, police officers may order drivers out of vehicles for traffic criminal offenses, contrary to the ICA's interpretation of HRS § 286–10 in *Bolosan*: that even if police had "specific articulable facts to believe that [a person] had committed the offenses of driving without a license, a misdemeanor ... they were not authorized to order [that person] out of his car, physically arrest him, and search him incident thereto." *Bolosan*, 78 Hawai'i at 104–05, 890 P.2d at 691–92. The ICA restated this holding in *State v. Veniegas*, 80 Hawai'i 75, 78, 905 P.2d 50, 53 (App.1995).[8] In this regard, we agree with the prosecution and overrule *Bolosan* and *Veniegas* insofar as they hold that police officers may not order a person out of a vehicle for committing a traffic-related criminal offense such as DWOL.

■ A review of HRS §§ 286–10, 803–5, and 803–6 reveals that these statutes overlap with respect to arrest procedures. Consequently, we must construe them *in pari materia*. *See* HRS § 1–16 (1993) (we must interpret laws upon the same subject matter with reference to each other). *See also State*

without protective equipment. This would contravene the legislature's intent as evinced by the legislative history of HRS §§ 286–10 and 803–6, which indicate that our legislature has opted to deal with most traffic violations largely by citation arrest rather than custodial arrest.

8. In *Veniegas*, police stopped the defendant for failing to wear a seat belt. He was unable to produce his driver's license, registration, or no-fault insurance card. Police verified that the defendant had a valid driver's license, that the car was owned by a car rental company, and that it was not reported stolen. Based on these facts, the officers ordered the defendant out of the car, whereupon they discovered drugs and drug para-

phernalia in plain view. The trial court refused to suppress the evidence. Citing *Bolosan*, 78 Hawai'i at 104, 890 P.2d at 691, the ICA reversed, and concluded, *inter alia*, that the exit order was unconstitutional because HRS § 286–10 required police to issue a summons or citation for *crimes* "allegedly committed by the accused while operating a motor vehicle" instead of taking the individual into custody. *Veniegas*, 80 Hawai'i at 78, 905 P.2d at 53. We also note that since the time the incidents in *Veniegas* occurred, failure to have a driver's license or proof of no-fault insurance in one's immediate possession (HRS § 286–116 (1993)) are no longer crimes. *See supra* note 6.

*v. Toyomura,* 80 Hawai'i 8, 19 n. 6, 904 P.2d 893, 904 n. 6 (1995). Moreover,

> where there is a 'plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter, the specific will be favored. However, where the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored.

*State v. Delima,* 78 Hawai'i 343, 347, 893 P.2d 194, 198 (1995) (quoting *Richardson,* 76 Hawai'i at 54–55, 868 P.2d at 1201–02).

▮▮▮▮▮▮ "This court, wherever possible, 'interprets every word, clause, and sentence of a statute to give them effect.'" *Hi Kai Investment, Ltd. v. Aloha Futons Beds & Waterbeds, Inc.,* 84 Hawai'i 75, 79, 929 P.2d 88, 92 (Haw.1996) (quoting *Shimabuku,* 79 Hawai'i at 357, 903 P.2d at 52). HRS § 803–5 authorizes a police officer to arrest a person without a warrant *if* the officer has probable cause to believe the individual has committed an "offense." HRS § 803–6(b) allows the issuance of a citation in lieu of arrest "in any case in which it is lawful for a police officer to arrest a person without a warrant for a misdemeanor, petty misdemeanor or violation...." Therefore, this discretion to arrest or issue a citation exists only in those situations where an officer is not statutorily precluded from arresting someone for nonfelony criminal offenses and violations.

The plain language of HRS § 286–10 requires that law enforcement personnel issue a citation in lieu of arrest in those instances where they are not required to take the alleged violator before a judge, *i.e.,* a full custodial arrest.[9] Thus, the statute actually foresees that there will be situations where police will take someone into physical custody or order them out of a vehicle for infractions of HRS chapter 286. Nevertheless, it is also evident from the legislative history of HRS § 286–10 that the legislature had

strong policy reasons for encouraging the issuance of citations in place of arrests:

> [The] Committee heard testimony to the effect that implementation of the citation arrest procedure should reduce the amount of time used in relation to that of making a physical arrest and thereby allow more time for preventive patrol.

Sen.Stand.Com.Rep. No. 545, in 1975 Senate Journal, at 1040. This trend toward the expediting of traffic adjudications was reflected in the 1993 decriminalization of many traffic infractions:

> In response to a request by the legislature, the judiciary prepared a report in 1987 that recommended, among other things, further decriminalization of traffic offenses, elimination of most traffic arraignments, disposition of uncontested violations by mail, and informal hearings where the violation or the proposed penalty is questioned. The legislature finds that further decriminalization of certain traffic offenses and streamlining of the handling of those traffic cases will achieve a more expeditious system for the judicial processing of traffic infractions.

HRS § 291D–1 (1993).

In light of the above analysis, we: (1) look to the plain meaning of the statutes; (2) ascertain and give effect to the intent of the legislature; and (3) strive to avoid repeal by implication. Accordingly, we hold that police officers have the authority to order alleged violators out of their vehicles in the case of traffic-related *criminal* offenses, but not in the case of traffic violations or when statutorily required to issue a citation.[10] For example, an officer may order a driver out of his car for DWOL, but not for failing to have a license in his possession; the latter offense is a violation while the former is a misdemeanor.

---

**9.** HRS § 803–9 (1993) provides in pertinent part:

**Examination after arrest; rights of arrested person.** It shall be unlawful in any case of arrest for examination:

. . . .

(5) To fail within forty-eight hours of the arrest of a person on suspicion of having committed a crime either to release or to charge

the arrested person with a crime and take the arrested person before a qualified magistrate for examination.

**10.** For example, police may not arrest a motorist for failing to have no-fault insurance, but must issue a citation instead. *See* HRS § 431:10C–117 (1993 & Supp.1996).

This result balances important policy considerations, such as the right of individuals to be free from unreasonable searches and seizures on the one hand, and two strong governmental interests in taking a suspect into custody—to ensure that the individual answers to the charges brought against him or her and the protection of the public—on the other. In this case, Vallesteros was an unlicensed driver and, therefore, unfit to drive. Removing such a driver from the road assists the government in fulfilling its interest in protecting the public. To hold that police officers are prohibited from doing so would compromise this concern.

## IV. CONCLUSION

Based on the foregoing arguments, we overrule *Bolosan* and *Veniegas* insofar as they hold that HRS § 286-10 prohibits police from ordering individuals out of vehicles for traffic-related criminal offenses. Therefore, the trial court incorrectly concluded that the police were statutorily mandated to cite Vallesteros for DWOL, rather than arresting him and taking him into physical custody. Officer Stafford's exit order was lawful inasmuch as Vallesteros had committed a criminal traffic offense. It was only after Vallesteros exited the vehicle that Officer Stafford spotted the revolver on the floor in plain view. "The plain view doctrine dictates that: if the original intrusion is justified, such as by consent, hot pursuit, warrant or as *incident to an arrest,* objects sighted in plain view will be admissible so long as the view was inadvertent." *State v. Wallace,* 80 Hawai'i 382, 395, 910 P.2d 695, 708 (1996) (quoting *State v. Stachler,* 58 Haw. 412, 417, 570 P.2d 1323, 1327 (1977)) (emphasis added). *See also State v. Dixon,* 83 Hawai'i 13, 23–24, 924 P.2d 181, 191–92 (1996). Accordingly, we vacate the trial court's suppression order, instruct it to enter an order denying the motion to suppress, and remand for trial.